**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
www.flsb.uscourts.gov

Case No.: 15-CV-60764-LENARD/GOODMAN

SONEET KAPILA, as the Chapter 7 Trustee of
the Geoffrey Edelsten Bankruptcy Estate,

       Plaintiff,

v.

MATTHEW MILITZOK, an individual, and
MILITZOK & LEVY, P.A., a Florida
professional association,

       Defendants.

_____/

**MEMORANDUM IN OPPOSITION TO DEFENDANTS'**
**MOTION TO DISMISS COUNTS II, IV AND V OF PLAINTIFF'S**
**COMPLAINT OR ALTERNATIVE MOTION FOR MORE DEFINITE STATEMENT**

Plaintiff, SONEET KAPILA, as the Chapter 7 Trustee of the Geoffrey Edelsten

Bankruptcy Estate ("Plaintiff" or "Kapila"), by and through the undersigned counsel, hereby files

his Memorandum in Opposition to Motion to Dismiss [Doc. 13] filed by Defendants,

MATTHEW J. MILITZOK ("Militzok"), JAY MILITZOK & LEVY, P.A., a Florida

professional association ("Militzok & Levy") (collectively, "Defendants"), and respectfully

states:

**I.**      **INTRODUCTION**

Defendants' Motion takes issue with the fact that their misconduct gives rise to a number

of independent causes of action under Florida law.  Because Plaintiff has properly alleged (i) a

"binding contract" between Defendants and Plaintiff; (ii) the Defendants' abusive behavior while

acting as a fiduciary which constitutes constructive fraud; and, (iii) the Defendants' conduct

which is both unfair and deceptive under FDUTPA, the Motion should be denied in all respects. Defendants have more than sufficient particularity of the claims against them to answer the Complaint and plead their defenses, if any.

## FACTUAL BACKGROUND

1.     According to the Complaint, at all material times hereto, Defendants represented, and had an attorney-client relationship with, Geoffrey Edelsten ("Edelsten"). The Defendants' representation involved various transactions – and, then, business disputes – involving Rafael, Limor and Isaac Keith Mawardi (the "Mawardis"), all of whom the Defendants also represented at the same time. At no time was Edelsten advised of the potential and actual conflicts of interest which were implicated by the joint and concurrent representation of the Mawardis and Edelsten. At no time did Edelsten waive any potential or actual conflict of interest which arose out of the joint and concurrent representation of the Edelsten and the Mawardis.

2.     *Assets in Play:* The relationship between the Mawardis and Edelsten started years ago and included an eight-figure-sum worth of assets, including (i) the Nurielle Joint Venture, a proposed world-wide fashion empire; (ii) the Millennium Property, a Florida residence with substantial equity; (iii) the 4142 Property, a Florida commercial property owned free and clear of any mortgage; (iv) the Resort Property, another Florida commercial property owned outright; (v) the Nurielle Airplane, to oversee the parties' far flung assets, (vi) the Investments' Property, a commercial property in Tennessee, with an insurance claim that was left pending in Florida; (vii) the Altels Property, a commercial property in Ohio; and (viii) the Dominican Republic properties, a casino with some related properties and option rights (collectively, the "Nurielle Properties").

3.     <u>*Nature of Joint Venture:*</u>   Pursuant to the parties' joint venture agreement, Edelsten was to primarily be the "money man" and the Mawardis were to handle more of the day-to-day operations for all the Nurielle Properties.   At the same time, but without advising them of any potential conflict nor obtaining any written or oral waivers of same, Defendants represented both the Mawardis and Edelsten in connection with this joint venture. All the same, Edelsten repeatedly directed the Defendants to make sure his investments of substantial funds were properly secured in each of the investments.  A couple of examples are set forth below:

 a.  On October 24, 2011, Edelsten advised Militzok in writing that he only authorized Militzok to close on the Investments Property subject to Edelsten's investment funds having a secured first mortgage on the property, which they previously discussed;

 b.  On November 9, 2011, Edelsten advised Militzok in writing that Edelsten only authorized Militzok to pay the deposit on the Altels Property subject to Militzok ensuring that Edelsten obtains sole title to property or title to the property is vested in a corporation in which he is the sole shareholder and director;

 c.  On November 9, 2011, Militzok responded to Edelsten questioning how he could get sole title to the property since he advised that the agreement between Edelsten and Militzok's other client, the Mawardis, should be a 43%/43% split;

 d.  On November 9, 2011, Edelsten advised Militzok that although he agrees with the corporate structure, prior to actually infusing funds, Edelsten stated again that it was "critical" that he obtain "total security" for the funds he advanced

for the subject real and personal property that he purchased such that Edelsten would be paid back said funds before any profits are distributed to other shareholders;

e.  On November 9, 2011, Militzok responded to Edelsten inexplicably advising that merely placing the third partner's shares in escrow would fulfill Edelsten's direction to obtain "total security" over his investments;

f.  On November 9, 2011, Militzok advised Edelsten that, although he was content with the corporate structures and arrangements, Edelsten still required that the funds he advanced be secured by mortgages, security agreements or some similar instrument;

g.  On November 9, 2011, Militzok attempted to persuade Edelsten to not use a mortgage because it would add costs and "complicate refinancing efforts";

h.  On November 9, 2011, Edelsten again directed Militzok in writing that he needs his funds advanced to the joint venture to be secured and safe, and that his understanding was that mortgages would be the best way to do that;

i.  On November 12, 2011, notwithstanding Edelsten's clear directions to place a mortgage based on Militzok's own advice, Militzok advised Edelsten that all his concerns regarding investment security would be covered by an operating agreement;

j.  On November 23, 2011, Edelsten advised Militzok that only subject to the concerns for security that he raised repeatedly with Militzok, Edelsten authorized payment of the deposit for the purchase of the Altels Property – to wit, that either a mortgage was being placed on the property or the property

would be first purchased in a company wholly owned by Edelsten, until such time that his investment is fully repaid and then the joint venture split of profits can begin;

k. On February 17, 2012, Edelsten again advised Militzok in writing that Militzok can only release additional funds from his escrow account, provided the funds are secured in a similar fashion as the original investments in the Nurielle Properties discussed above – i.e., a mortgage on the subject property or the property being titles in an entity of which Edelsten is the sole and controlling owner.

4.     Notwithstanding the foregoing, none of Edelsten's investments in the Nurielle Properties were secured with any mortgages – first-position or otherwise – nor were the properties titled ever in a company of which Edelsten was the sole owner and controller. Defendants simply ignored their client's directions.  This was because Defendants were only acting on behalf of the Mawardis who would necessarily benefit if the transactions were not properly documented or secured, or were such that the Mawardis could share in revenue prior to Edelsten being repaid his full investment.

5.     *Litigation and Bankruptcy*:  Because the joint venture investments brokered by Defendants were not properly documented, structured or secured, the relationship between the Mawardis and Edelsten quickly turned sour.  The Mawardis believed that Edelsten materially breached his obligations relating to the Nurielle Properties, and initiated suit in Broward County, Florida.  The Mawardis asserted a number of claims for breach of contract, fraud, and other intentional torts.  Edelsten asserted a number of similar counterclaims in the lawsuit on behalf of

himself and on behalf of the Florida limited liability companies through which he had a beneficial interest in the Nurielle Properties.

6.      In addition, Edelsten and the Mawardis were also parties or involved with heavy and contentious litigation in Tennessee state court and Federal court in Florida.  Ultimately, because the Defendants failed to properly document and secure Edelsten's investments in the Nurielle Properties, which investment funds ran through the Defendants' trust account, Edelsten was forced to settle with the Mawardis on disadvantageous terms, file for bankruptcy, pay exorbitant attorneys' fees and costs, and was left with virtually nothing from his substantial infusion of funds.

7.      *Breaches of Duties and Damages*: Attorneys such as the Defendants must possess the skill and knowledge possessed by other members of the profession in similar circumstances, and must carry out the matters entrusted to their professional care with a reasonable degree of skill and knowledge.  Based on the conduct set forth above, among others, the Defendants failed to possess and exercise such skill and knowledge in their representation of Edelsten. Additionally, the manner in which the Defendants represented the Edelsten was violative of Florida Bar Rules 4-1.1, 4.1.4, 4-1.5, 4-1.7, 4-1.8, 4-1.9, 4-1.10, 4-1.18, 4-1.21, 4-5.1, 4-5.2, 4-5.3 and 4-8.4, among others.

8.      As a direct and proximate result of the afore-described misconduct of the Defendants, Edelsten has incurred substantial damages, including, without limitation, (i) the loss of the millions of dollars that Edelsten invested in or loaned for the Nurielle Properties; (ii) the loss of the monies paid to the Defendants for services which were not performed on his behalf, were performed with gross negligence, or were performed contrary to Edelsten's interests or directions; (iii) a devaluation of his equity interest as a member of the entities that owned or

controlled the Nurielle Properties; and (iv) additional attorney's fees and costs Edelsten is and

has been constrained to incur to rectify the negative effects occurring as a result of the

Defendants' misconduct under the wrongful act doctrine.  All or at least part of these damages,

more likely than not, would have been settled or resolved in favor of Edelsten but for the

Defendants' misconduct.

## II.  MEMORANDUM OF LAW

### A.  Standard of Review Pursuant to Federal Rule of Civil Procedure 12(b)(6)

Dismissal is only warranted under Rule 12(b)(6) of the Federal Rules of Civil Procedure

if the plaintiff fails to state a claim upon which relief can be granted.  *Coach, Inc. v. Swap Shop,*

*Inc.*, 916 F.Supp.2d 1271, 1277 (S.D. Fla. 2012).  "[T]o survive a motion to dismiss, a complaint

must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face.'"  *Gubanova v. Miami Beach Owner, LLC*, 2013 WL 6229142, *1 (S.D. Fla. 2013)

(quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  In other words, the plaintiff must plead

"factual content that allows the [c]ourt to draw the reasonable inference that defendant is liable

for the misconduct alleged."  *Lee v. Bank of America, N.A.*, 2013 WL 2120312, *2 (M.D. Ga.

2013) (citing *Ashcroft, supra* at 678).  When determining whether a plaintiff has satisfied the

obligations of Rule 12(b)(6), "the court assumes that all of the factual allegations in the

complaint are true and construes them in the light most favorable to the plaintiff."  *FDIC v. Law*

*Office of Rafael Ubieta, P.A.*, 2012 WL 5307152, *2 (S.D. Fla. 2012).

### B.  Standard of Review Pursuant to Federal Rule of Civil Procedure 12(e).

Mindful of the liberal pleading requirements of the Federal Rules of Civil Procedure, a

motion for more definite statement is only appropriate if a pleading "is so vague or ambiguous

that a party cannot reasonably be required to frame a responsive pleading."  *Betancourt v. Marine*

*Cargo Mgmt., Inc.*, 930 F. Supp. 606, 608 (S.D. Fla. 1996) (citing to Fed.R.Civ.P. 12(e)). Accordingly, even if a pleading could have more detail, the courts prefer litigants to seek such detail in discovery as opposed to motion practice which will otherwise delay the case.

      **C.**      **<u>Count II</u>: Plaintiff has Stated a Cause of Action for Breach of Contract.**

As the Defendants concede, the elements for a breach of contract action under Florida law are only (1) a valid contract, (2) a material breach, and (3) damages. *Vozzcom, Inc. v. Beazley Ins. Co., Inc.*, 666 F. Supp. 2d 1321 (S.D. Fla. 2009).  Nevertheless, Defendants state that "[a]lthough the Complaint alleges the existence of an attorney-client relationship, the Complaint does not allege the existence of any contract that gives rise to an attorney-client relationship." [Doc. 13 at 3]  This is simply incorrect.

The Plaintiff unequivocally alleges that: "The attorney-client relationship between Defendants and Plaintiff was created by a binding contract between the parties." [Doc. 1 at ¶26] The Complaint then goes on to allege the manifold ways that the Defendants materially breached that "binding contract," causing the Plaintiff damages. [*Id*. at ¶¶27-28]  Therefore, Count II states a cause of action for breach of contract and the request for dismissal of same should be denied.

      **D.**      **<u>Count IV</u>: Plaintiff has Stated a Cause of Action for Constructive Fraud.**

Defendants next take aim at Count IV for constructive fraud. At bottom, Plaintiff is taking issue with the Florida common law, which provides for this claim, in addition to the similar breach of fiduciary duty claim. [Doc. 13 at 5-6]  Because the law clearly provides for both of these causes of action, notwithstanding their similarities and overlaps, this request for dismissal must also be denied.

> Constructive fraud occurs when a duty under a confidential or fiduciary relationship has been abused or where an unconscionable advantage has been taken. Constructive fraud may be based on a misrepresentation or concealment, or

the fraud may consist of taking an improper advantage of the fiduciary relationship at the expense of the confiding party.

*Levy v. Levy*, 862 So. 2d 48, 53 (Fla. 3d DCA 2003)*, citing Beers v. Beers,* 724 So.2d 109 (Fla. 5th DCA 1998) and *Rogers v. Mitzi,* 584 So.2d 1092 (Fla. 5th DCA 1991).

As such, materially breaching one's fiduciary duties – i.e., taking improper advantage of the fiduciary relationship – is a necessary element of a constructive fraud claim. *Harrell v. Branson*, 344 So. 2d 604, 606-07 (Fla. 1st DCA 1977) (constructive fraud "is a term which is applied to a great variety of transactions that equity regards as wrongful, to which it attributes the same or similar effects as those that follow from actual fraud and for which it gives the same or similar relief.")

Accordingly, although the constructive fraud claims and breach of fiduciary duty claims are similar, they both state an independent cause of action under Florida law.  The demand to dismiss Count IV should be denied as a result.

**E.**　　**Count V: Plaintiff has Stated a Cause of Action for Violations of FDUTPA.**

Defendants' final shot at the Complaint is against Plaintiff's claim for violations of FDUTPA.  This argument appears to take two forms, both of which fail to carry the day.  First, Defendants contend that FDUTPA is a "consumer protection law" which protects against unfair or deceptive practices, but that no such practices have been alleged.  [Doc. 13 at 6-7]  Second, Defendants' proclaim that attorneys are immune from FDUTPA's otherwise broad protective reach. [*Id*. at 7]  These contentions are incorrect on multiple fronts.

To begin with, although Plaintiff was undoubtedly a "consumer" of the Defendants' legal services, the suggestion by the Defendants' verbiage that FDUTPA is limited to "consumers" is no longer viable.  As recounted in *Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm*

*Beach County, Inc.*, 40 Fla. L. Weekly D1315 (Fla. 4th DCA 2015), the operative language of FDUTPA was amended in 2001, changing "who could bring an action from 'a consumer' to 'a person.' " *Contracting Co., Inc. v. Bellsouth Telecomms., Inc.,* No. 307–cv–598–J–32MCR, 2008 WL 360803, at *2–3 (M.D.Fla.Feb. 8, 2008) ("Courts in this district have held that [the 2001 amendment replacing "consumer" with "person"] demonstrates a clear legislative intent to allow a broader base of complainants who have been injured by violations of FDUTPA to seek damages, not just injunctive relief.").

Having said that, even prior to the amendment, the "Legislature has explicitly said that [F]DUTPA was designed 'to protect the consuming public and legitimate business enterprises' from 'unfair methods of competition' and unfair 'trade practices' in **any** business." *Keech v. Yousef*, 815 So. 2d at 719, citing to *Beacon Property Management, Inc. v. PNR, Inc.,* 785 So.2d 564 (Fla. 4th DCA 2001) (emphasis added).   Accordingly, the Defendants' statement that FDUTPA does "not reach attorneys," *see* Doc. 13 at 7, is wrong.[1]

On the contrary, the courts have already found that FDUTPA's "extremely broad" protective brush covers misconduct engaged in by attorneys in Florida.  *Kelly v. Palmer, Reifler, & Associates, P.A.*, 681 F. Supp. 2d 1356, 1371 (S.D. Fla. 2010) ("we decline the Palmer Law

---

[1]      The case of *Kelly v. Nelson, Mullins, Riley & Scarborough, L.L.P.*, 8:01CV1176T27MAP, 2004 WL 4054841, at *5 (M.D. Fla. 2004), distinguished by the other *Kelly* case *infra*, but still heavily relied upon by Defendants, is completely inapposite. There, the FDUTPA claim was only dismissed on a motion for summary judgment, after the parties had an opportunity to conduct full discovery and lay all the facts before the court. More importantly, that case involved a situation in which the attorney had engaged in a business deal *with* his clients – a situation far afield from the one at bench. *Smyrna Developers, Inc. v. Bornstein*, 177 So.2d 16 (Fla. 2d DCA 1965) (Business transactions between an attorney and client "ought to be subject to the closest scrutiny" because of the nature of the relationship.)

Firm's invitation to read attorney conduct out of the statute based only upon an attorney's status under the law."), citing to Fla. Stat. § 501.202(2) (the Florida Legislature expressed its intent that the provisions of FDUTPA be "construed liberally to promote" various policies including the protection of the "consuming public ... from those who engage in ... unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce.") & *Citibank (South Dakota) N.A. v. Nat'l Arbitration Council, Inc.,* No. 3:04–cv–1076–J–32MCR, 2006 WL 2691528, at *3 (M.D.Fla. Sept. 19, 2006) (Since FDUTPA does not clearly define what constitutes "unfair and deceptive," courts have held that "the statute should be construed liberally," and that the concept should be regarded as "extremely broad.").

As the *Kelly v. Palmer, et. al.* court explained: The Florida Supreme Court's decision in *Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole*, 950 So. 2d 380, 382 (Fla. 2007)

> indirectly supports [the] conclusion that FDUTPA does not exclude attorney conduct even though that specific issue was never raised in the case. The issue presented there was whether the litigation privilege could be invoked when a statutory cause of action was being litigated, just as it could when tortious behavior was at issue. The Florida Supreme Court answered that question in the affirmative: "the litigation privilege applies in all causes of action, statutory as well as common law." The claims in *Echevarria* were based on violations of FDUTPA and the Florida Consumer Collection Practices Act, by a law firm acting on behalf of mortgage lenders in foreclosure proceedings (and other defendants). *Id.* at 381. In holding that attorneys could avail themselves of the litigation privilege for FDUTPA claims, the court necessarily determined that attorney conduct fell within the purview of the statute. Had it read FDUTPA to exclude legal services, there would have been no need to decide whether the litigation privilege applied because the FDUTPA claim would have failed as a matter of law.

Finally, because FDUTPA applies to Plaintiff as a "person" aggrieved by Defendants engaging in "trade or commerce" with him, FDUTPA provides two independent ways that its terms were violated by Defendants. One, a *per se* violation accrues whenever there is an infringement of "[a]ny law, statute, rule, regulation, or ordinance which proscribes … unfair,

deceptive, or unconscionable acts or practices." *See* Fla. Stat. § 501.203(3)(c).  Two, a violation also occurs whenever a person engages in any "unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce," whether or not that specific act violates some other law, rule or statute.  *See* §501.204(1), Fla. Stat.; *see also PNR, Inc. v. Beacon Property Mgmt., Inc.,* 842 So.2d 773, 777 (Fla.2003) (an unfair practice is any "one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous **or** substantially injurious to consumers") (emphasis added).

Here, a violation occurred under both provisions.  That is to say, Plaintiff is entitled to relief under FDUTPA because Defendants violated multiple bar rules and otherwise engaged in actionable misconduct during their representation of the Plaintiff.  Surely the aforesaid bar rules and causes of action, such as breach of fiduciary duty, were intended to "proscribe…unfair, deceptive, or unconscionable acts or practices," s*ee* §501.203(3)(c) – that is, those acts or practices that "offend established public policy" and that avoid "substantially injurious" behavior towards clients who are entitled to receive proper, loyal and non-conflicted legal representation. *PNR, Inc.,* 842 So.2d at 777;  *see also In re Marks' Estate*, 83 So.2d 853, 854 (Fla. 1955) ("an attorney and client relationship is one of the closest and most personal and fiduciary in character that exists. The client relies upon the attorney and places confidence in him."); *Gerlach v. Donnelly,* 98 So.2d 493 (Fla.1957) ("An attorney has a duty to "handle [the] client's affairs with the utmost degree of honesty, forthrightness, loyalty and fidelity").

For these reasons, Count V under FDUTPA should not be dismissed.

## III.   <u>CONCLUSION</u>

In the final analysis, Defendants (i) improperly advised and represented Plaintiff in connection with his business and disputes; (ii) carelessly advised and represented Plaintiff

regarding the creation of security for his investments; and (iii) failed to advise Plaintiff of the monumental conflict of interest which arose out of their joint representation of Plaintiff and his partners discussed above. The result was that Plaintiff suffered significant damages, was ultimately forced to file bankruptcy and was left with virtually nothing of his substantial investments in various ventures.  Had the Defendants acted properly as the Plaintiff's loyal fiduciary, or at least advised Plaintiff of a conflict and his right to seek independent counsel to do that which they refused to do, Plaintiff would have been saved from this calamitous end. Accordingly, that such far-reaching and multi-faceted misconduct gives rise to a number of independent causes of action should not be surprising to the Defendants.  On the contrary, the law provides a number of ways to hold parties accountable for their wrongful behavior.  Based on the foregoing, Defendants' Motion should be denied in its entirety.

WHEREFORE, the Plaintiff respectfully requests that this Honorable Court enter an Order denying the Motion, as set forth herein, and such other and further relief as this Honorable Court deems just and proper.

**[CERTIFICATE OF SERVICE ON THE FOLLOWING PAGE]**

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system on this 21st day of July, 2015 and also certify that a true and correct copy of the foregoing was served via by transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notices of Electronic Filing.

Respectfully submitted,

STOK FOLK + KON
*Attorneys for Plaintiff*
18851 NE 29th Avenue
Suite 1005
Aventura, Florida  33180
T.305.935.4440
F.305.935.4470
service@stoklaw.com

BY: <u>*/s/ Joshua R. Kon*</u>
ROBERT A. STOK, ESQ.
Florida Bar No. 857051
rstok@stoklaw.com
JOSHUA R. KON, ESQ.
Florida Bar No. 0056147
jkon@stoklaw.com